UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARONI RAY, et al., | Case No. 20-cv-06279-JSC |
| Plaintiffs, | |
| v. | **ORDER RE PLAINTIFFS' MOTIONS FOR A PRELIMINARY INJUNCTION AND TO EXPEDITE DISCOVERY** |
| KENNETH T. CUCCINELLI, | Re: Dkt. Nos. 6 & 12 |
| Defendant. | |

Plaintiffs are 45 foreign nationals holding H-4 visas; they are also individual spouses of H-1B visa holders. They reside across the country, and allege that United States Citizenship and Immigration Services ("USCIS") has unlawfully withheld from them a 180-day automatic extension of work authorization upon the expiration of their Employment Authorization Documents, and that USCIS has created unreasonable delays in the adjudication of their work reauthorizations. They seek to compel USCIS to recognize that their work authorizations should be automatically extended and adjudicate their pending work reauthorization petitions. Plaintiffs also seek to expedite discovery. For the reasons set forth below, the Court DENIES Plaintiffs' motion for a preliminary injunction, DENIES the motion to expedite discovery, and schedules an initial case management conference for November 19, 2020.

**REGULATORY AND FACTUAL BACKGROUND**

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, regulates the admission of foreign nationals into the United States, including the temporary admission of nonimmigrants for specific purposes. Domestic employers who seek to hire foreign nationals for specialty occupations must apply and secure for these potential employees a visa under 8 U.S.C. § 1101(a)(15)(H)(i)(B)—an "H1-B" visa." An H1-B visa holder's spouse is entitled to derivative

United States District Court
Northern District of California

immigration status under 8 C.F.R. § 214.2(h)(9)(iv), and is commonly referred to as holding an "H-4" visa.  An H1-B visa is valid for an initial three years and may be extended for an additional three, *see, e.g.,* 8 U.S.C. § 1184(g)(4), 8 C.F.R. § 214.2(h)(15)(ii)(B); the validity period of an H-4 visa derives from and is dependent upon the length of the attendant H-1B visa, *see* 8 C.F.R. § 214.2(h)(9)(iv).  For an H-4 visa holder to apply for or extend their visa status, they must complete and submit a Form I-539, "Application to Extend/Change Nonimmigrant Status," to USCIS.  An extension for an H-4 visa holder's status may be submitted using the Form I-539 no earlier than six months before the holder's visa is set to expire.

H-4 visa holders are also eligible for work authorization and employment.  In order to request or extend their employment authorization, H-4 visa holders must file a Form I-765, "Application for Employment Authorization," and submit evidence that they are eligible for an employment authorization extension, remain in a spousal relationship with the related H-1B visa holder, and the related H-1B visa holder is eligible for extended status.  *See* 8 C.F.R § 274a.13.  Once an H-4 visa holder's Form I-765 is approved, they are given or have renewed their Employment Authorization Documents ("EAD"), and are employment-eligible.  As with the Forms I-539, H-4 visa holders may submit employment authorization renewal requests using the Form I-765 no earlier than six months before their visa status expires.  Forms I-539 and I-765 may be submitted concurrently.  *See* 80 Fed. Reg. 10,284 (Feb. 25, 2015).

The employer of an H-1B visa holder may apply for the holder to gain permanent immigration status.  However, due to various limitations the INA imposes on the number of employment-based visas that may be issued per year, *see* 8 U.S.C. § 1151(d), many employers and their H-1B employees face significant wait times when applying for permanent immigration visas. In light of this, H1-B status—and status for derivative H-4 visas—may be extended beyond the six-year maximum in increments not to exceed three years.  *See, e.g.,* 8 C.F.R. § 214.2(h)(13)(iii). An employer may apply for an extension petition to prolong an H-1B employee's stay no earlier than six months prior to the expiration of the employee's current visa.  *See* 8 C.F.R. § 214.2(h)(12)(ii).  While adjudication of the extension petition is pending, the H-1B visa holder's immigration status is extended for the length of the petition's adjudication.  *See* 8 C.F.R. §

United States District Court
Northern District of California

2

214.2(h)(2)(i)(H)(3).  Should the underlying visa expire before USCIS adjudicates the extension petition, the H1-B visa holder enjoys an automatic extension of work authorization for a maximum of 240 days.  *See* 8 C.F.R. § 274a.12(b)(20).

Unlike the H-1B holders on whom their own status depends, USCIS has determined that H-4 visa holders are not entitled to automatic extensions of their EAD and work authorizations submitted through Forms I-765 while Form I-539 status renewals are being adjudicated.  *See* 80 Fed Reg. 10,298-299.  Prior to 2019, USCIS adjudicated the Forms I-129, I-539, and I-765 concurrently on the basis that resolving the H-1B holder's status also resolved the underlying conditions to successfully adjudicate an H-4 visa holder's status and employment authorization petitions.  Since 2019, USCIS adjudicates the forms sequentially; because visa eligibility is a condition for continued work authorization, an H-4 visa holder's status renewal is adjudicated before their EAD renewal.  Additionally, in February 2019 USCIS began to require all H-4 visa holders submitting a Form I-765 to also submit biometric information to confirm the applicant's identity.  At bottom, three related inquiries—once adjudicated simultaneously—are now adjudicated sequentially.

Plaintiffs allege USCIS's decision to review H-1B and H-4 extension petitions separately slows the adjudication of H-4 visa holders' EAD, and that—without automatic extensions of their EAD—H-4 visa holders are, unlike their spouses, exposed to potential employment gaps or unemployment.  They argue further that the recently imposed biometrics requirement was made in bad faith to delay the adjudication of H-4 EAD petitions.  Plaintiffs in this action have filed Forms I-539 and I-765.  They allege the loss or imminent loss of their H-4 EAD work authorizations, resulting from the prolonged adjudications of their petitions that exceed the validity period of their current work authorizations, has caused or will cause irreparable harm, including the loss of employment, income, and employment-based benefits.  According to Plaintiffs, USCIS's failure to automatically extend H-4 visa holder's employment authorization is unlawful under the Administrative Procedure Act ("APA"), and the time it takes USCIS to adjudicate the H-4 work authorization renewals is unreasonable under the APA.

3

**DISCUSION**

## I.      Venue

Defendant argues that the Northern District of California is an improper venue for this action, and that Plaintiffs cannot meet their burden to demonstrate otherwise.  The Court disagrees.

Venue of civil actions is governed by 28 U.S.C. § 1391; pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss an action brought in an improper venue.  In actions against federal defendants, venue is proper in any judicial district where: (1) a defendant in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) the plaintiff resides if no real property is involved in the action.  28 U.S.C. § 1391(e)(1).  Once challenged, the plaintiff bears the burden of showing venue is proper in its chosen district.  *See Piedmont Label Co. v. Sun Garden Packing Co*., 598 F.2d 491, 496 (9th Cir. 1979).

The gravamen of Defendant's argument is that not all plaintiffs reside in this district, and therefore venue is improper.[1]  While only 6 of the 45 Plaintiffs reside in this district, Defendant's interpretation of the governing venue statute is improperly narrow.  "[T]he clear weight of federal authority holds that venue is proper in a multi-plaintiff case if *any* plaintiff resides in the District."  *Californians for Renewable Energy*, 2018 WL 1586211, at *5 (internal citation omitted) (original emphasis); *see also A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1301 (N.D. Ala. 2003) ("For over thirty years federal courts have conclusively and consistently held that the statutory language in 28 U.S.C. § 1391(e)(3) regarding the residency of 'the plaintiff' should be interpreted to mean any plaintiff rather than all plaintiffs.") (collecting cases);  *Raju v. Cuccinelli*, No. 20-CV-01386-AGT, 2020 WL 4915773, at *3 (N.D. Cal. Aug. 14, 2020) ("There is no dispute that venue is proper in this district; the two California-based plaintiffs live within the district, which is

---

[1] Defendant additionally argues that Defendant does not reside in this district, nor did any events giving rise to Plaintiffs' claims occur in this district.  However, Plaintiffs need only satisfy one condition of 28 U.S.C. § 1391(e)(1) to meet their burden of showing this action is properly venued.  *See Californians for Renewable Energy v. United States Envtl. Prot. Agency*, No. C 15-3292 SBA, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 30, 2018).

1    sufficient.") (internal citations omitted).[2]

2          The Court declines to depart with courts' decades-long interpretation of the venue statute.

3    The residence of 6 Plaintiffs in this District is, "standing alone, sufficient to establish that venue is

4    proper[.]" *Californians for Renewable Energy*, 2018 WL 1586211, at *6.  As such, Plaintiffs have

5    met their burden to show that venue in this district is proper.

6    **II.    Preliminary Injunction**

7          Plaintiffs move the Court to issue a preliminary injunction requiring Defendant to

8    automatically extend their employment authorizations while their employment authorization

9    renewal applications are pending on the grounds that its refusal to do so is unlawful.  In the

10   alternative, they move to require Defendant to adjudicate Plaintiffs' H-4 visa status extension and

11   work authorization renewals within seven days of the Court's order on the grounds that

12   Defendant's delay in adjudication is unreasonable.

13         **"**On a motion for a preliminary injunction, plaintiffs must make a 'threshold showing' of

14   four factors." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 844-845 (9th Cir. 2020) (internal

15   citation omitted).  "Plaintiffs must show that (1) they are likely to succeed on the merits, (2) they

16   are likely to 'suffer irreparable harm' without relief, (3) the balance of equities tips in their favor,

17   and (4) an injunction is in the public interest[;]" when "the government is a party, these last two

18   factors merge." *Id.*  (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

19   Plaintiffs must make a showing on each factor, *see Alliance for the Wild Rockies v. Cottrell*, 632

20   F.3d 1127, 1135 (9th Cir. 2011).  The party seeking an injunction bears the burden of establishing

21   these factors are satisfied.  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

22   A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted

23   unless the movant, by a clear showing, carries the burden of persuasion."  *Lopez v. Brewer*, 680

_____

25   [2] While the Ninth Circuit has not squarely addressed this issue, it has cited with approval the Third
26   Circuit's analysis of 28 U.S.C. § 1391(e) as requiring that venue need only be proper for one
     plaintiff in a multi-plaintiff action.  *See Ry. Labor Executives' Ass'n v. I.C.C.*, 958 F.2d 252, 256
27   (9th Cir. 1991); *see also Californians for Renewable Energy*, 2018 WL 1586211, at *6 ("[The
     Ninth Circuit], however, has cited [the Third Circuit] with approval and assumed without deciding
28   that the venue may be established based solely on the residence of any plaintiff.") (internal citation
     omitted).

United States District Court
Northern District of California

F.3d 1068, 1072 (9th Cir. 2012) (internal quotations and citation omitted).

**A.  Mootness**

As an initial matter, Defendant offers evidence that 14 of the original 45 Plaintiffs have now had their H-4 visa and employment authorization applications approved.  (*See* Dkt. No. 36.) Defendant contends that these Plaintiffs cannot therefore show a likelihood of success because their claims are now moot.

Federal jurisdiction requires a live case or controversy at every stage of litigation.  U.S. Const. art. III, § 2, cl. 1; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).  If, at any point during litigation, an event occurs such that there is no longer a live case or controversy upon which relief can be granted, the claim is moot and must be dismissed.  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).  Exceptions to mootness exist, however; where a case is "capable of repetition, but evading review" courts will not dismiss an otherwise moot action if: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (internal quotation and citation omitted).  To satisfy this first prong, an action must be of "*inherently* limited duration."  *Id.* (internal quotation and citation omitted) (original emphasis). "This is so because the 'capable of repetition, yet evading review' exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would always evade judicial review."  *Id.* (internal citations omitted).[3]  Controversies are "inherently limited in duration" if they will only ever present a live action until a particular date, after which the alleged injury will either cease or no longer be redressible.  "The limited duration of such controversies is clear at the action's inception." *Id*.

The Court need not decide whether the claims of the 14 Plaintiffs are moot because at oral argument Defendant argued, and Plaintiffs conceded, that the claims of Plaintiffs whose work

---

[3] The *ProtectMarriage* court cited as an illustration *Roe v. Wade*, 410 U.S. 113, 125 (1973), where the Supreme Court applied this exception because "regardless of any injunction that might issue, a woman can only obtain an abortion so long as she remains pregnant."  *Id.*

United States District Court
Northern District of California

1   reauthorizations have been adjudicated are moot with regard to the *relief* a preliminary injunction

2   would provide—fundamentally, there is no application USCIS can be enjoined to adjudicate if the

3   application has already been adjudicated.  Therefore, the claims of the 14 plaintiffs whose EAD

4   renewal petitions have been adjudicated are moot with regard to the relief Plaintiffs seek in their

5   motion for a preliminary injunction and thus are not being considered for purposes of the

6   preliminary injunction motion.

7          **B.  Unlawfulness Claim**

8          To show a likelihood of success on the merits, Plaintiffs must show that a challenged

9   agency action is likely to be held unlawful under the APA.  *East Bay Sanctuary*, 964 F.3d at 845.

10  The APA permits courts to "hold unlawful and set aside agency action[s]" found to be "arbitrary

11  and capricious,"  5 U.S.C. § 706(2), and the term "agency action" includes an agency's

12  interpretation of its own regulations, *see Nat'l Automatic Laundry & Cleaning Council v. Shultz*,

13  443 F.2d 689, 698 (D.C. Cir. 1971); *see also Ciba-Geigy Corp. v. U.S.E.P.A.*, 801 F.2d 430, 436

14  (D.C. Cir. 1986) ("Once the agency publicly articulates an unequivocal position [] and expects

15  regulated entities to alter their primary conduct to conform to that position" judicial review of the

16  action is appropriate).  A court's review of agency action under the APA "is limited to the grounds

17  that the agency invoked when it took the action," *Dep't of Homeland Sec. v. Regents of the Univ.*

18  *of Ca.*, 140 S. Ct. 1891, 1913 (2020), and it cannot accept "*post hoc* rationalizations for agency

19  action," *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

20         At issue on Plaintiffs' unlawfulness claim is 8 C.F.R. § 274a.13(d).  The regulation reads:

21  (d) Renewal application—

22  (1) Automatic extension of Employment Authorization Documents. Except as otherwise
        provided in this chapter or by law, notwithstanding 8 CFR 274a.14(a)(1)(i), the validity
23      period of an expiring Employment Authorization Document (Form I–766) and, for
        aliens who are not employment authorized incident to status, also the attendant
24      employment authorization, will be automatically extended for an additional period not
        to exceed 180 days from the date of such document's and such employment
25      authorization's expiration if a request for renewal on a form designated by USCIS is:

26

27  (i)     Properly filed as provided by form instructions before the expiration date shown on
                the face of the Employment Authorization Document, or during the filing period
28              described in the applicable Federal Register notice regarding procedures for

United States District Court
Northern District of California

obtaining Temporary Protected Status-related EADs;

(ii)    Based on the same employment authorization category as shown on the face of the expiring Employment Authorization Document or is for an individual approved for Temporary Protected Status whose EAD was issued pursuant to 8 CFR 274a.12(c)(19); and

(iii)   Based on a class of aliens whose eligibility to apply for employment authorization continues notwithstanding expiration of the Employment Authorization Document and is based on an employment authorization category that does not require adjudication of an underlying application or petition before adjudication of the renewal application, including aliens described in 8 CFR 274a.12(a)(12) granted Temporary Protected Status and pending applicants for Temporary Protected Status who are issued an EAD under 8 CFR 274a.12(c)(19), as may be announced on the USCIS Web site.

Plaintiffs argue that they qualify for automatic renewal of their EAD under the regulation, and that therefore USCIS's refusal to automatically extend their EAD for 180 days following the expiration of their current H-4 visa is unlawful.  The Court is not persuaded.

The relevant regulatory provision states that a work authorization renewal petitioner is eligible for an automatic extension where they belong to a "class of aliens whose eligibility to apply for employment authorization continues notwithstanding expiration of the [EAD] *and is based on an employment authorization category that does not require adjudication of an underlying application or petition before adjudication of the renewal application*[.]"  8 C.F.R. § 274a.13(d)(1)(iii) (emphasis added).  The regulation's text is clear: when an EAD renewal petition relies on the adjudication of another petition, the petitioner is not eligible for automatic renewal of the work authorization under 8 C.F.R. § 274a.13(d)(1)(iii).  For H-4 visa holders, the EAD renewal petition requires adjudication of two applications before the petitioner is eligible for renewal of the EAD: the spouse's H1-B renewal petition and the H-4 visa renewal.  Thus, H-4 visa holders are not entitled to automatic renewal of their EAD under 8 C.F.R. § 274a.13(d)(1).

This interpretation of the unambiguous regulation is supported by regulatory history.  In 2015, after a notice and comment period, the Department of Homeland Security ("DHS") promulgated its final rule that authorized H-4 visa holders to work in the United States.  80 Fed. Reg. 10,284.  "In this final rule, DHS [amended] its regulations to extend eligibility for employment authorization to certain H-4 dependent spouses of H-1B nonimmigrants to support

United States District Court
Northern District of California

the retention of highly skilled workers who are on the path to lawful permanent residence." *Id.* at 10,294-95.  To create this new work authorization, the agency amended two regulations: first, it amended 8 C.F.R. § 214.2(h)(9)(iv) "to extend eligibility for employment authorization to H-4 dependent spouses[;]" and second, it amended 8 C.F.R. § 214a.12(c) "by [] listing the H-4 dependent spouses described in revised 8 C.F.R. 214.2(h)(9)(iv) as a new class of aliens eligible to request employment authorization from USCIS[.]" *Id.* at 10,287.  While one commenter to the rule and its regulatory changes regarding H-4 employment authorizations requested an automatic extension of work authorization after an H-4 visa holder's current EAD expires, DHS "decline[d] to adopt this recommendation" because granting automatic extensions of H-4 visa holders' EAD "without review of the underlying extension of stay applications for the H-1B nonimmigrant and H-4 dependent spouse could result in employment authorization being extended to individuals who will eventually be determined ineligible for [work reauthorization]." *Id.* at 10,284.  Thus, in 2015 DHS granted *only* H-4 visa holders employment authorization—the agency did not amend any regulations' text or promulgate any rule granting H-4 visa holders an automatic extension of their work authorizations.

Similarly, in 2016 when addressing the "Retention of EB-1, EB-2, and EB-3 Immigrant Work and Program Improvements Affecting High-Skilled Nonimmigrant Workers," DHS again responded to comments regarding automatic extensions of H-4 visa holders' EAD.  81 Fed. Reg. 82,461 (Nov. 18, 2016).  Where some commenters noted that H-4 visa holders "can wait up to 9 months for an [EAD extension]" and proposed "the option for [H-4 visa holders] to [] obtain an automatic extension of their EADs," the agency disagreed that H-4 visa holders should receive automatic work extensions and declined to modify its rule governing work authorization extensions.  *Id.* at 82,460-61.  The agency stated that an H-4 visa holder's Form I-765 "will not be adjudicated until the underlying benefit requests are adjudicated" because an H-4 visa holder's "employment authorization . . . is contingent on the adjudication of an underlying immigration benefit," and therefore "automatically extending EADs [would] significantly increase[] the risk that EADs may be extended to ineligible individuals." *Id.*  This response also comports with the language of 8 C.F.R. § 214.2(h)(9)(iv): "An H–4 nonimmigrant spouse of an H–1B nonimmigrant

1    may be eligible for employment authorization *only if* the H–1B nonimmigrant is the beneficiary of

2    an approved Immigrant Petition for Alien Worker, or successor form, or the H–1B nonimmigrant's

3    period of stay in H–1B status is authorized[.]" *Id.* (emphasis added).

4          Plaintiffs contend that interpreting 8 C.F.R. § 274a.13(d) as not covering the automatic

5    extension of the H-4 visa holder's EAD is flawed because it does not consider the H-4 visa

6    holder's legal status during the adjudication of their work authorization renewal.  USCIS does not

7    need to condition an H-4 visa holder's work reauthorization on the adjudication of their legal

8    status because, the argument goes, while an H-4 visa holder's Form I-765 is being adjudicated

9    their legal status is extended pursuant to the first provision of 8 C.F.R. § 214.2(h)(9)(iv): "[H-4

10   visa applicants] may be admitted, if otherwise admissible, as H-4 nonimmigrants for the same

11   period of admission or extension as the [H-1B visa holder]."  Put differently, because H-4 and H-

12   1B visa holders have their legal statuses automatically extended once their visas expire, an H-4

13   visa holder meets the regulation's criteria for an automatic extension of their work authorization so

14   long as they submit the requisite renewal forms before the current visas' expiration.  Plaintiffs'

15   argument, however, ignores that 8 C.F.R. § 214.2(h)(9)(iv) continues and is unequivocal: "H–4

16   nonimmigrant status does not confer eligibility for employment authorization incident to status."

17   Thus, the relevant regulatory scheme is consistent with an interpretation of 8 C.F.R. § 274a.13(d)

18   that does not provide for the automatic extension of H-4 visa holders' work authorizations.

19         Because a plain reading of the regulation shows that Plaintiffs do not qualify for an

20   automatic extension of their work authorizations, USCIS's interpretation of 8 C.F.R. § 274a.13(d)

21   is not arbitrary and capricious.  In light of the regulation's clear and unambiguous language,

22   Plaintiffs have not met their burden of showing that their unlawfulness claim is likely to succeed

23   on its merits.  *See Klein*, 584 F.3d at 1201.[4]  Because Plaintiffs have not shown a likelihood of

24

25   ─────────────────────

     [4] Plaintiffs additionally argue that "[c]ourts do not defer to an agency's arbitrary and capricious

26   interpretation of its own standard."  *Circus Circus Casinos, Inc. v Nat'l Labor Relations Bd.*, 961
     F.3d 469, 483 (D.C. Cir. 2020) (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019)).  However,

27   "the possibility of deference can only arise if a regulation is genuinely ambiguous."  *Kisor*, 139 S.
     Ct. at 2414.  Because the regulation's plain text is clear, "uncertainty does not exist, [and] there is

28   no plausible reason for deference . . . . [the regulation] just means what it means—and the court
     must give it effect[.]"  *Id.* at 2415.

success on the merits regarding their unlawfulness claim, the Court does not address the remaining three factors concerning Plaintiffs' alleged harm, the balance of equities and public interest.  *See East Bay Sanctuary*, 964 F.3d at 844-45.

### C. Unreasonableness

Plaintiffs also argue that USCIS's delays in adjudicating their work authorization renewal petitions are unreasonable under the APA, and that they have met their burden of satisfying the elements required for this Court to grant their motion for a preliminary injunction.[5]  *See Klein*, 584 F.3d at 1201.  In particular, 11 plaintiffs had their EAD renewal petitions adjudicated approximately 7 months after applying for work authorization renewal; 24 plaintiffs have had their EAD renewal applications pending for at least 4 months, despite having completed USCIS's biometrics requirement; and 7 have had their EAD renewal applications pending for at least 4 months without having completed the biometrics requirement.[6]  For the reasons set forth below, the Court finds that Plaintiffs have not shown on the current record that these delays are so unreasonable as to violate the APA.

### 1. Success on the Merits

An administrative agency must conclude matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and the APA permits a court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).  "Agency action" includes "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  In determining whether an agency's delay is unreasonable under the APA, the Ninth Circuit has adopted the factors set out in *Telecommunications Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*").  *See Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997).  These include: "(1) the time agencies take to make decisions must be governed by

---

[5] Plaintiffs do not dispute that USCIS has the authority to implement a biometrics requirement, only that the delay caused by the requirement is unreasonable under the APA.  *See* 8 C.F.R § 103.2(b)(9).

[6] Three plaintiffs' EAD renewals were adjudicated within 6 months of submission. (*See* Dkt. Nos. 36-2 at 4, 36-3 at 5.)  Of the 24 plaintiffs who have completed USCIS's biometric requirement but await adjudication of their work authorization renewals, many have had applications pending for 6-8 months.  (*See* Dkt. Nos. 36-1 at 5, 36-2 at 4, 36-3 at 5-6, 36-4 at 4-5.)

1   a 'rule of reason'[;] (2) whether Congress has provided a timetable or other indication of the speed

2   with which it expects the agency to proceed[;] (3) that delays otherwise reasonable in the sphere of

3   economic regulation are less tolerable when human health and welfare are at stake[;] (4)

4   consideration of the effect of expediting delayed action on agency activities of a higher or

5   competing priority[;] (5) accounting for the nature and extent of the interests prejudiced by the

6   delay[;] and (6) that the court need not 'find any impropriety lurking behind agency lassitude in

7   order to hold that agency action is unreasonably delayed.'" *Id.* The Court considers these factors

8   below.

9                              **a.   Rule of Reason and a Timetable**

10          Taking the second factor first, 8 U.S.C. § 1571 provides that "[i]t is the sense of Congress

11   that the processing of an immigration benefit application should be completed not later than 180

12   days after the initial filing of the application."  While section 1571 does not establish a

13   "mandatory timeline" regarding the adjudication of H-4 status and EAD renewal petitions,

14   "Congress [set] a normative expectation in [the statute] of a reasonable processing time for an

15   immigrant benefit application as no more than 180 days after initial application."  *Konchitsky v.*

16   *Chertoff*, No. C07-00294 RMW, 2007 WL 2070325, at *4 (N.D. Cal. July 13, 2007).  This

17   expectation is consistent with the regulation providing that the earliest an H-4 visa holder may file

18   for work reauthorization is 180 days before their EAD expiration.  8 C.F.R. § 274a.13(a).  Because

19   the H-4 work authorization is not automatically extended once the current EAD expires, an H-4

20   visa holder is no longer eligible to work once the 180-day period from the earliest date of

21   submission through the EAD's date of expiration ends.  Yet every Service Center's average time

22   for adjudicating the underlying applications and EAD renewals exceeds 180 days (*See* Dkt. Nos.

23   36-1 at 3 ("Updated Rosales Declaration"), 36-2 at 2 ("Updated Peace Declaration"), 36-3 at 2

24   ("Updated Roller Declaration"), and 23-1 at 23 ("Smith Declaration"))[7] and—with the exception

---

[7] On October 28, 2020, in response to this Court's order requesting updated appendices
documenting the status of Plaintiffs' applications (Dkt. No. 35), Defendant filed updated
declarations from its Service Centers' supervisors, as well as updated appendices regarding the
status of Plaintiffs' Form I-539 and Form I-765 petitions.  (*See* Dkt. No. 36.)  In support of its
opposition to Plaintiffs' motion, Defendant provided the declaration of Timothy Smith, Associate
Center Director for USCIS's Vermont Service Center ("VSC"), who declared that the VSC's

United States District Court
Northern District of California

of the 3 plaintiffs whose EAD renewal adjudications were completed within 6 months of filing—

USCIS required approximately 7 months to fully adjudicate the 11 plaintiffs' approved petitions,

with the remaining plaintiffs' pending petitions on their way to taking as long or longer to

adjudicate.

The first *TRAC* factor requires that the time it takes for the agency to act is governed by a

"rule of reason."  Defendant argues that this factor weighs in its favor as it applies a "first in, first

out" rule to adjudicating EAD renewal petitions in the order in which they are received.

Defendant explains further that as of March 11, 2019 it required biometric information (such as

fingerprints, photographs, or a signature) to adjudicate Form I-539 applications, and that

implementing this requirement increased the processing time for Form I-539 applications.  (*See*

Dkt. Nos. 36-1 at 2, 36-2 at 2, 36-3 at 2, and 23-1 at 23.)   In addition, an applicant is required to

submit their biometrics in-person at an Application Support Center ("ASC").  "Due to the

COVID-19 pandemic, USCIS paused providing in-person ASC services on March 18, 2020.  The

agency began reopening ASCs to the public in phases, starting July 13, 2020.  The pandemic-

related closures resulted in additional adjudicative delays."  (Dkt. No. 36-1 at 2; *see also* Dkt. Nos

36-2 and 36-3.)

Plaintiffs contend that, notwithstanding Defendant's explanation, any delay in excess of

180 days is *per se* unreasonable.  The Court disagrees.  Plaintiffs do not dispute, as they cannot,

that Defendant has the authority to adjudicate Form I-129, Form I-569 and the Form I-765

applications sequentially.  Plaintiffs also cannot dispute that the agency has the authority to

impose the biometrics requirement.  *See* 8 C.F.R. § 103.2(b)(9).  Plaintiffs claim both actions were

taken in bad faith; however, they have not offered evidence in support of their preliminary

injunction motion to support such a finding.  While discovery might reveal otherwise, the Court

---

average processing time for a Form I-539 is 5.5-7.5 months, and the average processing time for a
Form I-765 is 3-5 months.  (Dkt. No. 23-1 at 23.)  In its updated appendices, Defendant provided
the declaration of Patrick J. Kernan, "the Section Chief responsible for overseeing the adjudication
of Form I-539" at the VSC.  (Dkt. No. 36-4 at 1 ("Kernan Declaration").)  However, Mr. Kernan's
declaration does not provide any information regarding the VSC's average processing time for
processing a Form I-765; Mr. Kernan states only that the average processing time for a Form I-539
is between 4.5-6.5 months.  (*Id.* at 2.)

United States District Court
Northern District of California

1    must resolve the motion for preliminary injunction based on the current record.  Finally, Plaintiffs

2    do not dispute that the implementation of the new biometrics requirement and the four-month

3    pause on biometrics appointments due to the COVID-19 pandemic slowed the adjudication of the

4    Forms I-539 and I-765 applications.  A reasonable inference on the present record is that those

5    delays will lessen as Defendant has more experience implementing the requirement and catches up

6    from the back log created by the pause imposed by the pandemic.

7            *Muvvala v. Wolf*, No. 1:20-CV-02423 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25,

8    2020), recently considered the same issue.  The plaintiffs, H-4 visa holders, similarly challenged

9    USCIS's adjudication procedure for H-4 status renewals and EAD renewals.  *Id.*  The court held

10   that USCIS's adjudication of applications "in the order they were filed," with the exception of

11   applications that met the criteria for expedited review, satisfied the first *TRAC* factor and provided

12   an "identifiable rationale" for the agency's actions.  *Id.* (internal quotation and citation omitted).

13   *Muvvala* reasoned that the agency's "first in, first out" procedure satisfied the first *TRAC* factor

14   because since "Congress has not provided a specific timetable by which USCIS must process

15   applications to extend H-4 status or renew EAD[,]" USCIS's process was permissibly within its

16   discretion, and any delays in the plaintiffs' EAD renewals were not unreasonable as a result.  *Id.*

17   Based on the present record, the Court agrees.

18           As such, the Court finds that a rule of reason governs the time it takes Defendant to

19   adjudicate the H-4 EAD renewal applications.

20                              **b.  Human Health & Prejudice**

21           Because the "third and fifth [*TRAC*] factors overlap, requiring the court to consider

22   whether human health and welfare are at stake, and the nature and extent of the interests

23   prejudiced by the delay," *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1073 (N.D. Cal. 2014) ("*Islam

24   II*") (internal citation omitted), the Court considers them together below.

25           The inability of Plaintiffs to "be able to work in the United States or renew [their] driver's

26   license[s] . . . almost certainly has a negative effect on [Plaintiffs'] welfare" and weighs the third

27   and fifth factors in favor of Plaintiffs.  *Muvvala*, 2020 WL 5748104, at *4 (citations omitted); *see

28   also Khan v. Johnson*, 65 F. Supp. 3d 918, 930–31 (C.D. Cal. 2014) (holding that the plaintiffs'

United States District Court
Northern District of California

14

interests in pursuing permanent residence and citizenship are compelling because a final determination on an application "end[s] a stressful waiting period"); *Yea Ji Sea v. U.S. Dep't of Homeland Sec.*, No. CV-18-6267-MWF (ASX), 2018 WL 6177236, at *6 (C.D. Cal. Aug. 15, 2018) (holding that a plaintiff's inability "to work or obtain a driver's license, and therefore [lose the ability] to support herself" likewise weighs these factors in plaintiffs' favor). In sum, Plaintiffs face the hardships these *TRAC* factors contemplate.

Defendant offers one argument against the balance of these factors in Plaintiffs' favor: their inability to maintain continuous, lawful employment and associated benefits "[does not] rise to a level that would significantly change the assessment of the unreasonableness of the delay in light of the agency's competing priorities," *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005), in collecting biometrics and processing Plaintiffs' applications sequentially. (Dkt. No. 23 at 25.) The Court is not persuaded. Defendant does not dispute that Plaintiffs will suffer adverse consequences should they lose employment eligibility as a result of USCIS's prolonged EAD renewal adjudications. (Dkt. No. 23 at 26-27.) On balance, the prejudice Plaintiffs face is severe compared to the agency's interest in collecting biometric information through its recently imposed requirement and processing applications sequentially. Furthermore, prejudice exists not only for Plaintiffs, but for their families, which include children and expected children, as well. (*See, e.g.,* Dkt. No. 6-4 at 1 ("Prathi Declaration"), 6-4 at 18 ("Leelaraman Declaration"), 6-5 at 1 ("Mangipudi Declaration"), 6-7 at 19 ("Chellappa Declaration").) *See also Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at *7 (finding that where "further significant health and welfare implications exist[ed]" for plaintiff's family this supported weighing third and fifth *TRAC* factors in plaintiff's favor).

Fundamentally, USCIS's conclusory assertion of its purported "priorities" does not, on balance, change the prejudice Plaintiffs and their families suffer as a result of USCIS's delayed EAD renewal adjudications. Accordingly, the Court agrees with Plaintiffs that the third and fifth *TRAC* factors weigh in their favor.

          c.  **Effect of Expediting Delayed Action**

The fourth *TRAC* factor requires this Court to consider the effect expedited adjudication of

United States District Court
Northern District of California

Plaintiffs' EAD renewal petitions has "on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

Defendant argues that because USCIS Processing Centers process H-4 status extension and EAD renewal petitions in the order received, if granted, Plaintiffs' motion would result in "their applications get[ting] preferential treatment and [] moved to the front of USCIS's backlog at the expense of other applicants." (Dkt. No. 23 at 25.)  The Court agrees.  "[A] judicial order putting [Plaintiffs] at the head of the queue [would] simply move[] all others back one space and produce[s] no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (internal quotation and citation omitted).  A court order of this type would only "impose offsetting burdens on equally worthy" applicants. *In re Barr Labs., Inc.*, 930 F.2d 72, 73 (D.C. Cir. 1991);  *see also Xu v. Nielsen*, No. 18 Civ. 2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit.").  Moreover, granting Plaintiffs' motion would unduly complicate USCIS's expedited review process—forcing the agency to weigh Plaintiffs' applications against currently pending expedited applications—and potentially move applications approved for expedited review back, despite the additional fees other applicants have paid to have their petitions reviewed on an expedited basis.  Furthermore, some Plaintiffs have had expedited review requests *denied*, and granting Plaintiffs' motion would be tantamount to expediting some plaintiffs' petitions when the agency has already rejected these requests because those plaintiffs failed to meet the criteria for expedited review.

Plaintiffs counter that requiring USCIS to provide the service—adjudicating their EAD extensions—for which they have paid a fee is not prejudicial under the fourth *TRAC* factor. (Dkt. No. 6 at 29).  This does not address, however, the inequity that granting Plaintiffs' motion would produce regarding other EAD renewal petitioners' adjudications.  Plaintiffs' contention in their reply that the "structure of the H-4 EAD program" contradicts USCIS's "first in, first out" policy fails for substantially the same reason.

It is appropriate to deny relief based on the reasonableness of administrative delay when

1   relief would produce an inequitable result between applicants and "do nothing to cure the

2   deficiencies of the [adjudication] process," even if all other *TRAC* factors weigh in Plaintiffs'

3   favor. *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020); *see also Mashpee*

4   *Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100. Because doing so would "only harm other

5   applicants, who are equally deserving of prompt adjudication," the Court concludes that the fourth

6   *TRAC* factor weighs in Defendant's favor. *Xu*, 434 F. Supp. 3d at 55.

### d. Bad Faith

8       Plaintiffs argue that USCIS's choices to impose a biometric requirement on H-4 visa

9   holders' work reauthorization petitions, as well as the agency's decision to adjudicate H-1B visa

10  statuses, H-4 visa statuses, and H-4 work reauthorizations sequentially, constitute "bad faith" under

11  the sixth *TRAC* factor. When analyzing a claim for unreasonable delay, a court need not "find any

12  impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably

13  delayed.'" *TRAC*, 750 F.2d at 80 (internal quotation and citation omitted); *see also Muvvala*, 2020

14  WL 5748104, at *4 ("[A]n allegation of bad faith is not necessary to succeed on an unreasonable

15  delay claim [under the APA].") (internal citation omitted). However, Plaintiffs argue that because

16  these choices were affirmatively made to "slow down adjudications" of their work

17  reauthorizations, the delays imposed by the agency's choices are therefore *per se* unreasonable

18  under the APA. *See Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987); *see also Tummino v.*

19  *Von Eschenbach*, 427 F. Supp. 2d 212, 231 (E.D.N.Y 2006) ("[A] delay that is the result of bad

20  faith—that is, a delay for improper reason—is a delay that is *per se* unreasonable[.]") (internal

21  citation omitted).

22      Courts analyzing the reasonableness of agency delay have stated that "difficulty and

23  uncertainty [are] inherent" in judicial review of agency decisions, and "caution[ed] against

24  second-guessing" agencies' judgments regarding its procedures. *Oil, Chem. & Atomic Workers*

25  *Int'l Union v. Zegeer*, 768 F.2d 1480, 1488 (D.C. Cir. 1985). In short, under the APA "[there is]

26  little doubt that Congress intended that the discretion of the *agencies* and not that of the courts be

27  exercised in determining when extra procedural devices should be employed." *Vermont Yankee*

28  *Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 546 (1978) (original

United States District Court
Northern District of California

17

emphasis).  While a court has "no basis for reordering agency priorities," it may find that an agency has manifested "bad faith" under the sixth *TRAC* factor where the agency "singl[es] someone out for bad treatment or assert[s] utter indifference to a congressional deadline[.]"  *In re Barr Labs., Inc.*, 930 F.2d at 76.  In these instances, "the agency will have a hard time claiming legitimacy for its priorities."  *Id.*

To find that an agency acted in bad faith, however, a party must present evidence "of bad faith or impropriety driving the delay in adjudication" of the relevant applications.  *Dehrizi v. Johnson*, No. CV-15-00008-PHX-ESW, 2016 WL 270212, at *7 (D. Ariz. Jan. 21, 2016); *see also Yelin Du, v. Emilio T. Gonzales, et al.*, No. CV0700151MMMCTX, 2008 WL 11336158, at *11 (C.D. Cal. Feb. 19, 2008) ("Finally, neither party has adduced evidence suggesting that USCIS has handled [the plaintiff's] application in an improper fashion."); *Singh v. Napolitano*, 909 F. Supp. 2d 1164, 1177 (E.D. Cal. 2012) ("With respect to the sixth [*TRAC*] factor, there is no evidence of impropriety or bad faith by [the defendant]."); *Ali v. Mukasey*, No. C07-1030RAJ, 2008 WL 682257, at *4 (W.D. Wash. Mar. 7, 2008) ("Finally, the court notes that there is no evidence of an improper purpose underlying the Government's delay in this action, thus dispensing with the sixth *TRAC* factor.")

In support of the proposition that USCIS "specifically and intentionally" targeted H-4 visa holders with its biometrics requirement, Plaintiffs identify databases maintained by DHS, USCIS's Electronic Immigration System ("ELIS") and Immigration Biometric and Background Check System ("IBBC") as sources in which Plaintiffs already have their required biometric information stored—therefore, they argue that USCIS's recently imposed requirement is unnecessary and "only intended to delay adjudication" of the H-4 visa status and work reauthorizations, given that USCIS has the information it requires available from other sources. (Dkt. No. 6 at 32.)  Plaintiffs aver USCIS's mandate that H-4 visa holders complete the requirement in-person at an ASC further and unnecessarily lengthens the adjudication period. (*Id.*)

The agency's February 2019 announcement regarding the requirement stated that it was imposed to confirm the identity of the applicant.  (Dkt. No. 1 at 19 ¶ 106.)  The Service Center

United States District Court
Northern District of California

1   Supervisors' updated declarations, however, state that the biometric requirement was adopted as

2   an "additional security check[]." (Dkt. Nos. 36-1 at 2, 36-2 at 2, 36-3 at 2, and 23-1 at 23.) These

3   declarations also make clear that USCIS's "long-term agency objective is to incorporate

4   biometrics [] across most or all [F]orm types." (Dkt. No. 36-1 at 2.) USCIS's long-term objective

5   to incorporate the requirement into other applications rebuts Plaintiffs' argument that USCIS is

6   targeting H-4 visa holders with the biometric requirement that it has the authority to implement.

7   *See* 8 C.F.R. § 103.2(b)(9). In the absence of other evidence, the Court cannot find that USCIS

8   adopted the in-person biometric requirement to target H4 visa holders in bad faith.

9        Plaintiffs also urge that USCIS's change in its adjudication processes, now requiring H-4

10  visa renewals to be adjudicated before work authorizations, further evinces USCIS's bad faith

11  conduct. They do not offer evidence, however, to support the conclusion that the agency's

12  decision to adjudicate Forms I-129, I-539, and I-765 sequentially "was intended to slow down"

13  adjudications of H-4 EAD renewal petitions. (Dkt. No. 6 at 33.) While Plaintiffs allege that the

14  agency's adjudicatory change "occurred right around the time that [USCIS] met with the

15  Immigration Reform Law Institute," the lone fact that this meeting occurred does not provide

16  sufficient evidence to demonstrate bad faith on the part of USCIS. Moreover, USCIS's

17  adjudication procedures comply with its regulations. *See* 8 C.F.R. § 103.2(b)(9); 8 C.F.R. §

18  274a.13(d).

19       Accordingly, based on the current record, the Court cannot find that the sixth *TRAC* factor

20  weighs in Plaintiffs' favor.

21                                                  * * *

22       In sum, the third and fifth *TRAC* factors weigh in Plaintiffs' favor, and the sixth factor is

23  irrelevant to this Court's analysis. Under the second factor there is some indication H-4 visa

24  holders' EAD renewal petitions should be adjudicated within 6 months, but under the first *TRAC*

25  factor a rule of reason governs Defendant's process for adjudicating H-4 status and work

26  authorization renewals and explains, at least for the moment, the adjudicatory delays extending

27  beyond 6 months. Because the first and fourth factors weigh in Defendant's favor, and granting

28  Plaintiffs' motion would produce inequitable results while "do[ing] nothing to cure the

1   deficiencies of the [adjudication process]," *Xu*, 434 F. Supp. 3d at 55, the Court finds that

2   Plaintiffs have not shown a likelihood of success on the merits of their unreasonable delay claim.

3   Therefore, the Court does not address the remaining three factors concerning Plaintiffs' alleged

4   harm, the balance of equities and public interest.  *See East Bay Sanctuary*, 964 F.3d at 844-845.

5   **IV.    Expedited Discovery**

6           Plaintiffs seek expedited discovery from Defendant in the form of 5 interrogatories, 5

7   requests for production, and a potential Rule 30(b)(6) deposition from an unidentified deponent—

8   to be deposed at an unspecified date—on the basis of the agency's responses.  (Dkt. No. 12 at 5.)

9   The scope of these requests is broad, reaching: the composition of the Senior Policy Council at

10  USCIS allegedly responsible for making the decisions to impose the biometric requirement and

11  adjudicate H-4 status renewals and work reauthorizations sequentially; the documents the Council

12  relied upon in making these decisions; their communications about these decisions; and their

13  rationales for making these decisions.  (*Id.*)  Plaintiffs ask this Court to order USCIS to respond to

14  these requests within 10 days.  The Court, in its discretion, declines to do so given that Plaintiffs

15  have not offered any evidence in support of their bad faith argument.

16          Plaintiffs offer only conclusory and bare allegations that USCIS's decision to sequentially

17  adjudicate the relevant petitions was "intended to slow down adjudications of H4 EAD petitions,"

18  made in bad faith, and that "upon information and belief" USCIS imposed the biometric

19  requirement to slow down processing times.  (Dkt. No. 1 at 22-28 ¶¶ 120, 126, 149, 163.)

20  Moreover, USCIS's decisions are compliant with the regulations governing EAD adjudications

21  and those permitting the agency to impose a biometrics requirement.  *See* 8 C.F.R. § 103.2(b)(9); 8

22  C.F.R. § 274a.13(d).  Under these circumstances Plaintiffs have not shown good cause for

23  requiring Defendant to produce discovery in 10 days.  Further, and as previously discussed, on this

24  record Plaintiffs have not established that USCIS unreasonably delayed adjudication of their work

25  reauthorization petitions, further supporting this Court's decision to deny expedited discovery.

26          Accordingly, the Court declines to exercise its discretion to authorize expedited discovery

27  regarding Plaintiffs' unreasonable delay claim.

28

United States District Court
Northern District of California

**CONCLUSION**

For the reasons set forth above, the Court DENIES Plaintiffs' motion for a preliminary injunction, and DENIES Plaintiffs' motion for expedited discovery.  The Court schedules an initial case management conference for November 19, 2020.  In connection with the CMC statement, Defendant shall provide updated appendices on the status of Plaintiffs' work authorization applications.

This Order disposes of Dkt. Nos. 6 & 12.

**IT IS SO ORDERED.**

Dated: November 3, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

21